IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| LINDSAY HORN <br> On behalf of herself and <br> All Other Similarly Situated Individuals <br><br> Plaintiffs. <br><br> V. <br><br> PEMC LLC d/b/a LEGENDS <br> GENTLEMEN'S ENTERTAINMENT <br> CLUB, AND BO SALIMA <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br><br><br> Case No.: <br><br> CLASS ACTION <br> DEMAND FOR JURY TRIAL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COLLECTIVE AND CLASS ACTION COMPLAINT

## SUMMARY

1. Defendants PEMC LLC, d/b/a Legends Gentlemen's Entertainment Club, and individual Defendant Bo Salima (hereinafter "Defendants"), required Plaintiff Lindsay Horn and others similarly situated, (hereinafter "Plaintiff" or "Plaintiffs") to work as exotic dancers at their adult entertainment club but refused to compensate dancers at the applicable minimum wage.

2. Specifically, Defendants misclassified dancers, including Plaintiff, as independent contractors. Plaintiff's only compensation was in the form of tips from club patrons, the club paid no wages. In fact, Defendants took money from Plaintiff under the premise that she "leased" space at the club. Plaintiff was also required to share her tips with Defendants and its employees who do not customarily receive tips outside of a valid tip pool.

3. As a result, Defendants failed to pay Plaintiff and all other members of the class and collective minimum wage compensation they were entitled to under the Federal Fair Labor Standards Act ("FLSA") and the Michigan Minimum Wage Law ("MMWL").

1

4. Plaintiff brings this class and collective action against Defendants seeking damages, backpay, restitution, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## SUBJECT MATTER JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §216(b) and 28 U.S.C. §1331.

6. This Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. §1367 because such claims do not raise novel or complex issues of state law, and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.

7. Venue is proper in the Eastern District of Michigan because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants operate an adult entertainment club that is located in this District.

## PARTIES AND PERSONAL JURISDICTION

8. Plaintiff Lindsay Horn is an individual residing in Troy, Michigan. Her consent is attached hereto as Exhibit "A".

9. Opt-in Plaintiffs are current or former exotic dancers who have worked at Defendants' adult entertainment club within the applicable limitations period and will file a valid consent to join this suit with the Court.

10. The Michigan Class Members are all current and former exotic dancers who worked at Defendants' adult entertainment club at any time starting three years before this Complaint was filed, up to the present.

11. PEMC LLC is a domestic limited liability company incorporated in Michigan and doing business as Legends Gentlemen's Entertainment Club in Detroit, Michigan. PEMC LLC may be served via its registered agent Jody Haddad at 415 E. Congress Street, Detroit, Michigan, 48226.

12. Bo Salima is an individual owner and/or manager of Legends. He may be served at 415 E. Congress Street, Detroit, Michigan, 48226.

13. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privileges of conducting activities in the State of Michigan and established minimum contacts sufficient to confer jurisdiction over said Defendants. The assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

14. Defendants have and continue to have systematic contacts with the State of Michigan sufficient to establish general jurisdiction over them. Specifically, Defendants conduct and/or conducted business in Michigan by operating a club in Detroit. Defendants also employ workers and contract with residents and business in Michigan.

15. This cause of action arose from or relates to the contacts of Defendants with Michigan residents, thereby conferring specific jurisdiction over Defendants.

## II.   FLSA COVERAGE

16. At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d) and the MMWL.

17. The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

18. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

19. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

20. Individual manager/owner Bo Salima is an employer under the FLSA because he, as the general manager of the club, 1) has the power to hire and fire the dancers and other employees, 2) supervises and controls employee work schedules or conditions of employment, and 3) is the individual responsible for maintaining employment records.

21. At all material times, Plaintiff and FLSA Class Members were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

22. At all material times, Plaintiff and the Michigan Class Members were employees of Defendants under the MMWL.

## FACTS

23. Defendants operate an adult entertainment club in Detroit, Michigan under the name of "Legends."

24. Defendants employ exotic dancers and have employed hundreds of dancers over the years at Legends Club.

25. Plaintiff was previously employed as an exotic dancer at Defendants' adult entertainment club during the statutory time period.

26. Plaintiff worked on a regular basis for Defendants' gentlemen establishment located in Detroit, Michigan.

27. Plaintiff worked at Legends from March 2017 until December 2018.

28. Plaintiff worked between 5-6 hours per shift for most of her employment except for a few weeks in the fall of 2017 and 2018.

29. Plaintiff worked between 4-5 shifts per week before October 2017, and then worked 3-4 shifts a week after October 2017.

30. Plaintiff never received any wages during her employment with the club.

31. During at least one workweek between March 2017 and December 2018, Defendants did not pay Plaintiff the federally mandated minimum wage. For example, starting in the first week of March 2017 that she worked, and continuing until the end of her employment with the club, Plaintiff was not paid a minimum wage for her work.

32. Plaintiff, FLSA Class Members, and Michigan Class Members were classified by Defendants as independent contractors who "leased" the premises.

33. Plaintiff, FLSA Class Members, and Michigan Class Members were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay dancers whatsoever for any hours worked at its establishment.

19. Furthermore, Defendants charged Plaintiff, FLSA Class Members, and Michigan Class Members a "rental fee" per shift worked. In other words, they had to pay to work at the club and sometimes completed a full shift only to owe club money. This happened to Plaintiff at least once in March 2017 and continued to happen regularly until the end of her employment at Legends in 2018.

20. Defendants also required Plaintiff, FLSA Class Members, and Michigan Class Members to share their tips with other non-service employees who do not customarily receive tips, including club managers, the disc jockeys, and house moms.

21. Plaintiff, FLSA Class Members, and Michigan Class Members received tips and/or dance fees from Defendants' customers but no other form of payment from their employer.

22. The money received by Legends after a shift of dance performances was not included in Defendants' gross sales receipts and was not disbursed in any way as wages to any workers.

23. Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiff, FLSA Class Members, and Michigan Class Members were employees of Defendants under both Federal and State Law. At all times, Defendant required Plaintiff and other exotic dancers to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

24. Defendants hired/fired, issued pay, supervised, directed, disciplined, and performed all other duties generally associated with that of an employer with regard to the dancers.

25. The following non-exhaustive list of policies and procedures actually implemented during the relevant statutory period further demonstrates the dancers' status as employees:

    a. Defendants make dancers pay a house fee or "rental" fee to rent the premises and the fee increases with the time of the night;

    b. Plaintiff paid up to $110 as a "rental" or "house" fee, to dance on stage at

the club every shift;

c. Defendants charge a $35 "room fee" on top of the house fee to dancers who perform private dances for customers in private rooms;

d. Defendants unilaterally make the decision not to pay any wages to dancers;

e. Defendants provide the dancers with music, stages, poles, and other tools to perform dances, the dancer provides her own body;

f. Defendants mandate that dancers pay a minimum of $25 to the DJ, $20 to house moms on their way out, and club managers require that the dancers tip the DJ and house moms;

g. Defendants' managers monitor the tips given to dancers on stage by patrons and arbitrarily demand money if they see a dancer making money on stage;

h. Defendants set the price for a dance at the club, typically $25;

i. Dancers are required to be at the club for a minimum 3 nights a week, and must choose either Sunday, Monday, or Tuesday as one or more of their shifts;

j. Defendants charge a $150 "freelance" fee, i.e. a fine, if a dancer does not pick one of the above days as their shifts;

k. Defendants charge a $50 fine for missed days;

l. Dancers are not allowed to leave at 2am on the weekends when the club patrons leave, they must wait until the club is empty;

m. Dancers are required to check in at the front desk when arriving;

n. Defendants require dancers to dance on stage for a minimum number of songs in order to attract customers;

o. Defendants apply fines/fees to the dancers if they fail to follow Defendants' guidelines or directions; they play favorites with the dancers and prevent those who do not follow all their rules from working;

p. Defendants maintain the premises – including 3 floors, multiple big screen TVs, and a state-of-the-art audio and light set up;

6

      q.      Defendants hire all employees of the club – the dancers, DJ's, bouncers, managers, and employ up to 60-90 dancers on the weekends;

      r.      Defendants employ many dancers, including the named Plaintiff, for several months at one time and in some cases, for years;

26. Defendants utilized or still utilize, a particularly draconian system of exploiting the "rent" and fines that a dancer supposedly owed the club. If a dancer was unable to pay a tip out or was unable to pay the rental fee to "lease" the premises, the club would allow the dancer to perform but would mark down the supposed debt in a ledger. Other fines & fees such as late fee ($20 per hour), missed day fee ($50) were also kept track of in the ledger. When asked to account for the total owed, club managers would flatly refuse to show the ledger accounts to dancers. Additionally, the club managers would hound, harass, intimidate, and threaten dancers into paying them an arbitrary sum of money to "wipe out their debt."

27. As an example, Plaintiff Lindsay Horn was told six months into working for Legends that she owed the club $1,500. When she asked to see the records, the manager refused. The manager asked her to arbitrarily start paying $100 at the start of her shift (higher than the norm of $45) if she wanted to continue working, which Plaintiff did due to her economic dependence on the club. Plaintiff paid $700 to supposedly "wipe off" the debt, only to be told by the club three months later that she had another $1,800 in debt. From then on, until almost the end of her employment, Plaintiff would work hard every shift only to pay the club a debt that would not be "wiped out" or even lessen.

28. Essentially, the Club created and maintained an illegal debt collection business within the premises of the club and under the full control of the club management and ownership. Indeed, club managers were the recipients of these supposed debt repayments. Not only is this ledger system plain evidence of the severe economic control exercised over the dancers, it is an example of the illegal, punitive, and exploitative way in which the club kept its dancers bound to the club and unable to assert their economic independence. In addition to the facts as pled above, the club exploited Ms. Horn and other dancers repeatedly in this manner.

29. Defendants misclassified Plaintiff, FLSA Class Members, and Michigan Class

Members as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA and State Law.

30. Plaintiff and the Class Members constituted the workforce without whom Defendants could not perform their services.

31. Plaintiff, FLSA Class Members, and Michigan Class Members are not exempt from the minimum wage requirements under the FLSA and applicable State Law.

32. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA is willful and is not based on a good faith and reasonable belief that its conduct complied with the FLSA.

33. Defendants misclassified Plaintiff and Class Members with the sole intent to avoid paying them in accordance to the FLSA. There are multiple federal court opinions finding that this method of compensation is in violation of the FLSA, and therefore, Defendants' conduct is willful.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF 29 U.S.C. § 206 COLLECTIVE ACTION (FAILURE TO PAY MINIMUM WAGE)

34. Plaintiff incorporate all allegations contained in the foregoing paragraphs.

35. Defendants' willful practice of failing to pay Plaintiff and FLSA Class Members at the required minimum wage rate violates the FLSA and was not based in good faith. 29 U.S.C. § 206.

36. The FLSA requires Defendants to allow Plaintiff and other similarly situated exotic dancers to keep all tips and gratuities received from customers. As set forth above, Defendant failed to pay Plaintiff and other similarly situated exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements. Moreover, without legal excuse or justification, Defendant kept and/or assigned to management tips and gratuities received by Plaintiff and other exotic dancers and belonging to Plaintiff and other exotic dancers.

37. Also, as alleged above, Defendants' practice of collecting "rent" from the dancers similarly violates the law and the principle that the cost of doing business may not be passed on to employees. *See Reich v. Priba Corp.,* 890 F.Supp. 586, 596 (N.D. Tex. Mar. 27, 1995).

38. None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiff.

### COUNT II: VIOLATION OF MICHIGAN MINIMUM WAGE LAW (CLASS ACTION)

39. Plaintiff and Michigan Class Members incorporate all allegations contained in the foregoing paragraphs.

40. The MMWL requires Defendants to pay Plaintiff and other similarly situated exotic dancers at an hourly rate at least equal to the Michigan Minimum Wage.

41. The MMWHL requires that Defendants allow Plaintiff and other similarly situated exotic dancers to keep all tips and gratuities received from customers.

42. As set forth above, Defendants failed to pay Plaintiff and other similarly situated exotic dancers at hourly rates in compliance with the Michigan Minimum Wage requirements.

43. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiff and other exotic dancers and belonging to Plaintiff and other exotic dancers. Defendants also charged rent illegally.

44. Defendants' failure to pay Plaintiff and other similarly situated exotic dancers as required by the MMWL was willful and intentional and was not in good faith.

### COLLECTIVE AND CLASS ALLEGATIONS

**A.  FLSA Class Members**

45. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three years prior to the commencement of this action to present.

46. Plaintiff has actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiff worked with other dancers who worked at Legends Club. As such, Plaintiff has first-hand personal knowledge of the same pay violations at Legends Club for other dancers. Furthermore, other exotic dancers at Defendants' establishment have shared with Plaintiff similar pay violation experiences including wage and tip

confiscations, as those described in this complaint.

47. Other employees similarly situated to the Plaintiff work or have worked for Defendants' gentlemen's club business, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

48. FLSA Class Members perform or have performed the same or similar work as Plaintiff.

49. FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

50. As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wage.

51. Defendants' failure to pay for hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

52. The experiences of Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

53. The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

54. All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

55. Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

56. As such, Plaintiff bring their FLSA minimum wage claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

**B.    Michigan Class Action**

57.    Plaintiff and the Michigan Class Members incorporate all preceding paragraphs as though fully set forth herein.

58.    Plaintiff brings her Michigan wage claims as a Rule 23 class action on behalf of the following class:

> **All of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

59.    <u>Numerosity</u>.  The number of members in the Michigan Class is believed to be over forty.  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Michigan Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Michigan Class may be determined from Defendants' employment files, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Michigan Class and Defendants.

60.    <u>Typicality</u>.  Plaintiff's claims are typical of the Michigan Class because like the members of the Michigan Class, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Michigan Class.  Defendants failed to pay non-exempt employees who worked at Legends minimum wage for all of their hours worked.  Plaintiff and the Michigan Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Michigan law.

61.    <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Michigan Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Michigan law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour

litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Michigan Class she seeks to represent.

62. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a. Whether Defendants failed to pay Plaintiff and Michigan Class the minimum wage for all hours worked.

    b. Whether Defendants took wages and tips from dancers to run their business in violation of Michigan Wage Laws

63. The common issues of law include, but are not limited to:

    a. Whether Defendants improperly classified Plaintiff and the Michigan Class as independent contractors;

    b. Whether Plaintiff and the Michigan Class are entitled to compensatory damages;

    c. The proper measure of damages sustained by Plaintiff and the Michigan Class; and

    d. Whether Defendants' actions were "willful."

64. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Michigan Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Michigan Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

65. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Michigan Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The

identity of members of the Michigan Class is readily identifiable from Defendants' records.

66. This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on the Defendants to prove it properly compensated its employees; and (3) the burden is on the Defendants to accurately record hours worked by employees.

67. Ultimately, a class action is a superior forum to resolve the Michigan claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Michigan Class according to applicable Michigan laws.

68. <u>Nature of notice to be proposed</u>.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, i.e. "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Michigan class by mail, electronic mail, print, broadcast, internet and/or multimedia publication.

## RELIEF SOUGHT

69. Plaintiff, FLSA Class Members, and Michigan Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the mandated minimum wage rate under state law and federal law.

70. Plaintiff, FLSA Class Members, and Michigan Class Members are also entitled to recover all of the money Defendants misappropriated, such as house fees, forced tips, and wages taken after their performances.

71. An award of statutory liquidated damages in amounts prescribed by the MMWL.

72. An award of statutory liquidated damages in amounts prescribed by the FLSA.

73. Prejudgment and post-judgment interest on unpaid back wages pursuant to the FLSA;

74. An award of attorneys' fees and costs under the FLSA and the MMWL.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, FLSA Class Members, and Michigan Class Members respectfully request that judgment be entered in their favor awarding the damages requested above.

Plaintiff also requests for such other and further relief to which Plaintiff and Class Members may be entitled, at law or in equity.

                                  Respectfully submitted,

                                  KENNEDY HODGES, L.L.P.

                                  By:  /s/ Gabriel A. Assaad
                                  Gabriel A. Assaad
                                  gassaad@kennedyhodges.com
                                  *Seeking Admission to practice in the Eastern District of Michigan*
                                  Texas State Bar No. 24076189
                                  4409 Montrose Blvd., Suite 200
                                  Houston, TX 77006
                                  Telephone: (713) 523-0001
                                  Facsimile: (713) 523-1116

                                  LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS

                                  Respectfully submitted,

                                  FAGAN MCMANUS, P.C.

                                  By: /s/ *Jennifer L. McManus*
                                      Jennifer L. McManus  (P65976)
                                      Local Attorney for Plaintiff
                                      25892 Woodward Avenue
                                      Royal Oak, MI  48067-0910
                                      (248) 542-6300

Dated:  July 30, 2019                  jmcmanus@faganlawpc.com

# Exhibit A

## NOTICE OF CONSENT TO BE A PARTY PLAINTIFF

Fair Labor Standards Act of 1938, 29 U.S.C. 216(b)

I consent to be a party plaintiff in the case in which this consent is filed. By joining this lawsuit, I designate the named plaintiff(s) in the case in which this consent is filed and his/her attorneys (and other persons those individuals designate as necessary) as my representatives to make all decisions on my behalf, to the extent permitted by law, concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to this lawsuit. I further acknowledge that I intend for this consent to be filed in order to recover any unpaid wages owed to me by my current/former employer whether this consent is filed in this action or in any private cause of action that may be filed on my behalf for such recovery at a later time. For purposes of pursuing my unpaid wage claims I choose to be represented by Forester Haynie PLLC and other attorneys with whom they may associate.

Date: 1/2/2019 | 2:37 PM PST

Signature: *Lindsay Horn* (DocuSigned by: 3A4E17E5F3CD42B...)

Printed Name: Lindsay Horn

Consent Form